1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JORGE ALMANZAR, on behalf of                  No.  2:20–cv–0699–KJN
     himself and all others similarly situated,
12                                                  ORDER
                        Plaintiff,
13
            v.
14
     HOME DEPOT U.S.A., INC.,
15
                        Defendant.
16

17

18          Presently pending before this court is plaintiff's revised motion for preliminary approval

19   of a Rule 23 Class Action and California Private Attorneys General Act ("PAGA") settlement

20   agreement in this labor dispute.[1]  (ECF No. 28.)  This is the second time the court has reviewed

21   the parties' stipulated settlement agreement.  (See ECF No. 26 (granting provisional class

22   certification and denying preliminary settlement approval).)

23          For the following reasons, the court GRANTS plaintiff's motion for preliminary approval

24   of the revised settlement agreement.

25   ////

26

27   _____
     [1] The parties consented to the jurisdiction of the magistrate judge for all purposes pursuant to 28
28   U.S.C. § 636(c), and thereafter the case was reassigned to the undersigned.  (See ECF Nos. 24-
     26.)

                                                    1

1    I.    <u>Background</u>

2            Plaintiff filed this putative class action against defendant Home Depot on April 3, 2020,

3    alleging defendant failed to:  1) provide class members with compliant meal periods; 2) provide

4    class members with compliant rest periods; 3) pay class members overtime wages; 4) reimburse

5    class members for necessarily incurred business expenses; 5) timely pay all class members wages

6    due upon termination; 6) furnish timely and accurate wage statements to class members; and thus

7    violated California's Unfair Competition Law (count 7); for which plaintiff seeks PAGA

8    penalties (count 8).  (ECF No. 1).  The class, defined as "all current and former non-exempt,

9    hourly Night Team Merchandising Execution Associates who worked for Home Depot in

10   California between April 3, 2016 and November 1, 2021," contains approximately 1,992

11   members.  (<u>Id.</u> at 7, ¶ 23;) (ECF No. 26 at 4.)

12           A.  <u>Plaintiff's first unopposed motion for preliminary class and settlement approval</u>

13           On October 21, 2021, plaintiff submitted an unopposed motion for preliminary approval

14   of class action and PAGA settlement.  (<u>See</u> ECF No. 18.)  Under the terms of this first proposed

15   agreement, in exchange for the full settlement of "Released Claims" defendant agreed to pay a

16   non-reversionary gross settlement amount of $750,000, subject to the following estimated

17   deductions:

18           (a) Class representative incentive award of $15,000;

19           (b) Class counsel's attorneys' fees of $250,000;

20           (c) Class counsel's litigation costs of $30,000;

21           (d) Settlement administrator costs of $14,250; and

22           (e) A PAGA payment of $28,125, to be paid to the Labor Workforce and Development

23           Agency ("LWDA"), out of an overall PAGA award of $37,500.

24   (ECF No. 18-2 at 27, ¶ 29 and 39, ¶ 15.)

25           Class members' actual recovery was to be distributed based on a pro rata per work week

26   distribution formula ("distribution formula") based on the number of weeks a class member

27   worked for defendant during the class period.  (<u>See</u> ECF No. 26 at 25-26, citing ECF No. 18-1 at

28   11.)  The number of weeks worked by a given class member would be divided by the total of all

1  class members' work weeks, and then multiplied by the net settlement amount.  (Id.)

2          B.  Court's order denying motion

3      On July 19, 2022, the court approved the proposed class, but denied the settlement

4  agreement without prejudice due to four main concerns.  (ECF No. 26.)  First, the court was

5  unable to assess the adequacy of relief, as required under Rule 23(e)(3), because plaintiff's

6  motion did not include enough information regarding defendant's maximum potential liability.

7  (Id. at 20.)

8      Second, the court was concerned that the distribution formula resulted in inequities, which

9  the court must consider in determining whether the settlement agreement is reasonable, fair, and

10  adequate under Rule 23(e)(4).  (Id. at 26 (discussing latent inequities caused by the distribution

11  formula).)  Specifically, the court noted that although not all class members were entitled to the

12  portion of the settlement award incurred for waiting time penalties, all class members would share

13  the portion of the award incurred for waiting time penalties under the distribution formula.  (Id.)

14  In addition, the proposed distribution formula had the potential to treat individual class members

15  disproportionately by failing to take into account the varying rates of pay and number of hours

16  worked per week.  To properly assess whether and to what extent the distribution formula treated

17  class members inequitably, the court ordered that any renewed motion include information

18  regarding the class members' rates of pay and hours worked.  (Id. at 26-27.)

19      Third, the court was concerned that the settlement agreement did not describe a

20  mechanism for distributing the PAGA payment, and did not clearly inform potential class

21  members that they would be bound by the PAGA settlement even if they declined to join the

22  settlement class.  (Id. at 30.)  The court ordered that the parties make clear the distinction between

23  PAGA settlements and class settlements in any revised settlement agreement and class notice.

24  (Id. at 35.)

25      Fourth, the court ordered that several changes be made to the class settlement notice.  (Id.

26  at 36.)  The changes to the notice identified by the court are described at length in the July 19,

27  2022 order, and so the court does not repeat them here.  (See id.)

28      Although the court ultimately denied the settlement agreement, it made findings that favor

1    settlement approval and which the court incorporates and reiterates in this order.  First the court

2    approved the proposed class, defined as "all current and former non-exempt, hourly Night Team

3    Merchandising Execution Associates who worked for Home Depot in California between April 3,

4    2016, and November 1, 2021."  (Id. at 37.)  The court approved the Markham Law Firm as class

5    counsel and Jorge Almanzar as class representative.  (Id.)  The court found the settlement

6    agreement was a result of adequate representation and arm's length negotiations.  (Id. at 17-18.)

7    Finally, the court approved of the proposed method of distributing relief and found the terms of

8    the proposed award of attorneys' fees were adequate for purposes of preliminary approval.  (Id. at

9    24-25.)  The court deferred its decision on the PAGA settlement, which the court addresses in this

10   order.  (Id. at 29.)[2]

11            C.  Plaintiff's second motion (the current motion)

12       Plaintiff submitted a revised settlement agreement and class notice on October 17, 2022,

13   with language addressing the court's four concerns.  (ECF No. 28)  To enable the court to assess

14   adequacy of relief, plaintiff informed the court that the potential maximum recovery for plaintiff's

15   class claims is an estimated $12,635,042, and the potential penalty exposure for the PAGA claims

16   is $10,808,736.  (ECF No. 28-2 at 10-13)  Plaintiff also detailed the parties' views of the claims'

17   strengths and weaknesses.

18       In response to the court's second concern about equitable distribution of the funds, the

19   parties updated the agreement to create a waiting time penalties subclass and updated the formula

20   for calculating class members' individual settlement payment accordingly.  (Id. at 76, ¶ 18

21   (defining "Individual Settlement Payment" to mean the amount paid to a class member from the

22   net settlement fund, taking into account the class member's waiting time penalties subclass

23   allocation) ;) (id. at 78, ¶ 32 (incorporating the waiting time penalties allocation into the

24   definition of "Payment Ratio – Class");) (id. at 80, ¶¶ 42-43 (defining Waiting Time Penalties

25   Subclass and Waiting Time Penalties Subclass Allocation).)  Regarding the distribution formula,

26

27   ───────────────────
     [2] The parties requested the court appoint the CPT Group, Inc. as settlement administrator.  (ECF
28   No. 18-2 at 28, ¶ 34.)  As it was not addressed in the court's prior order, the court hereby grants
     the parties' request.

4

plaintiff's counsel informed the court that the range of rates of pay among the class members was between $10.00 and $25.99, with 80% of class members making between $11.00 and $16.87 per hour.  (Id. at 14, ¶ 32.)  Plaintiff did not provide the court with information related to the range of the length of shifts by the class members or the quantity of shifts per week.  However, plaintiff's counsel informed the court that 88% of shifts worked triggered overtime.  (Id. at 15, ¶ 34.)  In addition, the estimated highest settlement payment (in the scenario of a now former employee class member who worked every workweek in the class period) would be approximately $1,127.50, and the lowest possible payment would be $3.75 (in the scenario of a current employee who worked for only one work week during the class period, which would be approximately $3.75).  (Id. at 11, ¶ 24.)

To address the court's third concern regarding the agreement's failure to distinguish between the PAGA settlement from the class action, the settlement agreement was updated with separate definitions for class settlement members and PAGA settlement members, and clearly states that class members may not opt out of the PAGA portion of the settlement.  (Id. at 77, ¶¶ 25-29 and 89, ¶ 12.)  Additionally, the agreement clarifies that there will be separate settlement payments for the class and PAGA portions of the settlement.  (Id. at 76-77, ¶¶ 18, 24-25;) (see also id at 37, ¶ 16 (subtracting from the gross settlement amount the $9,375 to be paid to the PAGA settlement members from the class net settlement fund, yielding an anticipated net settlement fund of 403,250);) (cf. ECF No. 18-2 at 15 (draft agreement failing to subtract the $9,375 allotted to the PAGA settlement from the class net settlement fund).)

Fourth and finally, the class notice was amended per the court's instructions from the July 19, 2022 order.  (Id. at 103-10).  The court vacated the hearing and took the matter under submission in accordance with Local Rule 230(g).  (ECF No. 30.)

II.     Legal Standards

At the preliminary approval stage, the court considers the likelihood that it will ultimately approve the proposed class and settlement and whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); Fed. R. Civ. P. 23(e)(1)(B).  The final approval stage comes after notice to and feedback from the class

1    and a fairness hearing. Fed. R. Civ. P. 23(e)(2).

2          Although this action largely consists of class claims, it also includes a claim for penalties

3    under the California Labor Code's Private Attorneys General Act ("PAGA"). PAGA claims are

4    distinct from class claims. See Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 86-87 (2020) ("[A]

5    representative action under PAGA is not a class action[,]" but rather one "on behalf of the

6    government.") (quotations omitted). This is because "[p]laintiffs may bring a PAGA claim only

7    as the state's designated proxy, suing on behalf of all affected employees." Id. (emphases

8    original); see Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906, 1914 (2022) (explaining

9    how California law characterizes PAGA as creating a "type of qui tam action" with the

10   representative private plaintiff acting in place of the government (quoting Iskanian v. CLS

11   Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014)). Because a PAGA claim is not "a

12   collection of individual claims for relief" like a class action, Canela v. Costco Wholesale Corp.,

13   971 F.3d 845, 855 (9th Cir. 2020) (discussing Kim's holding), PAGA claims "need not satisfy

14   Rule 23 class certification requirements," Hamilton v. Wal-Mart Stores, Inc., 39 F.4th 575, 583

15   (9th Cir. 2022). However, like class action settlements, PAGA settlements must be approved by

16   the court. Cal. Lab. Code § 2699(l)(2). California courts apply "a Rule 23-like standard," asking

17   whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."

18   Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

19      III.    Discussion

20          A.  Class Settlement

21          In determining whether to approve a settlement agreement, the court shall consider

22   whether: 1) the class representatives and class counsel have adequately represented the class;

23   2) the proposal was negotiated at arm's length; 3) the relief provided for the class is adequate, and

24   4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(a-

25   d).

26             1.  Adequate Representation

27          The court's July 19, 2022 order found adequate representation. (ECF No. 26 at 17 ("with

28   the above-noted possible exception of the amount of plaintiff's incentive award, the court

1    preliminarily finds that the adequacy factor is met for purposes of both Rule 23(e)(2)(A) …").)

2    Because the renewed motion is unchanged with respect to class representatives and class counsel,

3    the court maintains that this factor weighs in favor of approval.

4                                    2.   Arm's Length Negotiation

5           Similarly, the court's July 19, 2022 order found the parties negotiated at arm's length.  (Id.

6    at 17-18 ("the settlement the parties propose is the product of a formal negotiation facilitated by

7    an experienced mediator after the exchange of sufficient discovery to allow the parties to

8    ascertain defendant's potential exposure based on employee pay data…therefore the court

9    preliminary finds that this factor is satisfied").)  Accordingly, this factor favors approval of the

10   instant motion.

11                                   3.   Adequacy of settlement agreement's proposed relief

12          The court determines adequacy of relief in a settlement agreement by considering 1) the

13   costs, risks, and delay of trial and appeal; 2) the effectiveness of any proposed method of

14   distributing relief to the class, including the method of processing class-member claims; 3) the

15   terms of any proposed award of attorneys' fees, including timing of payment; and 4) any other

16   agreement made in connection with the proposal.  Fed. R. Civ. P. 23(e)(2)(c)(i-iv).  The court

17   previously found the following factors favor approval:  effectiveness of the proposed method of

18   distributing relief, the terms of any proposed award of attorneys' fees, and any other agreement

19   made in connection with the proposal and incorporates these findings into this order.  (ECF No.

20   26 at 23-25.)  Therefore, the court's remaining consideration is whether the relief is adequate

21   considering the costs, risks, and delay of trial and appeal.  (Id. at 19, 22;) (see ECF No. 28-1 at

22   16-17.)

23          To assess whether the value of the settlement is adequate, the court compares the proposed

24   settlement amount to the parties' estimates of the maximum amount of damages recoverable in

25   successful litigation.  In re MyFord Touch Consumer Litig., 2019 WL 1411510, at *10 (N.D. Cal.

26   Mar. 28, 2019).  Courts frequently approve a settlement valued at just a small fraction of

27   maximum potential liability where parties face substantial risk and obstacles to success on the

28   merits.  See e.g., Viceral v. Mistras Grp., Inc., 2016 WL 5907869, at *8-9 (N.D. Cal. Oct. 11,

                                          7

1    2016) (approving settlement representing 8.1% of the full verdict value in recognition of the

2    "daunting" risks plaintiffs faced in proving their case).

3         Here, the maximum potential recovery of plaintiff's class claims is $12,635,042.  (ECF

4    No. 28-2 at 10, ¶ 22.)  Thus, the class settlement amount of $712,000 represents nearly 6% of the

5    maximum potential damages amount.  The settlement amount falls within the range of possible

6    approval in light of the apparent weaknesses on each of the claims and low likelihood of success

7    on the merits.  For instance, regarding the meal and rest break claims, there is evidence that

8    defendant paid more than $1.2 million in premiums and that payment was automatic, which cuts

9    against plaintiff's claim that defendant had a systemic policy intended to avoid paying such

10   premiums.  (Id. at 2-3, ¶¶ 3-4.)  Further, plaintiff runs the risk of class members testifying that

11   they voluntarily skipped meals or took late or short meals as a matter of personal preference even

12   though they were provided the opportunity to take compliant meal breaks.  (Id. at 3, ¶ 4.)

13   Variation in testimony could threaten class certification.  Further, plaintiff's counsel indicates

14   there is no evidence to establish the frequency of alleged rest break violations, making it difficult

15   to quantify damages on a class-wide or individual basis.  (Id. at 5-6, ¶ 10.)

16        As for the unpaid overtime claim, evidence exists that plaintiff could–and frequently did–

17   obtain overtime.  (Id. at 7, ¶ 13.)  Plaintiff faces further certification challenges to establish which

18   employees allegedly worked off the clock, why they did so, and if defendant had actual or

19   constructive knowledge of such work.  (Id.)

20        Plaintiff's fourth claim, that employees were sometimes required to use their personal cell

21   phones for work purposes, is not particularly strong, as defendant had a policy expressly

22   prohibiting employees from using their cell phones for any work purpose.  (Id. at 7-8, ¶ 15.)

23   Further, defendant provided employees with alternative devices that make use of a phone

24   unnecessary.  (Id.)  Plaintiff's claim that defendant underpaid mileage reimbursements also

25   carries considerable risk, as defendant would argue its payroll records demonstrate mileage

26   reimbursement.  (Id. at 9, ¶ 18.)  Besides, any litigation regarding the sufficiency of

27   reimbursement might open a fact inquiry that would put plaintiff's class certification at risk.  (Id.)

28        Plaintiff's remaining fifth claim (wage statement penalties) and sixth claim (waiting time

8

penalties claim) are derivative claims, meaning their success is entirely dependent on success on the direct claims.  (Id. at 9-10, ¶ 20.)  The California Supreme Court's decision in Naranjo v. Spectrum Sec. Servs., Inc., 13 Cal. 5th 93, 509 P.3d 956 (2022), supports unpaid break premiums claims and is thus favorable to plaintiff (finding that, like other forms of wages, any unpaid premium pay for unlawfully denying an employee a meal or rest break must be paid promptly once an employee leaves the job to avoid triggering derivative waiting time penalties).  However, despite the favorable ruling, plaintiff's derivative claims are still unlikely to succeed because the direct claims have significant challenges.

Given the risks to the merits of plaintiff's case and to class certification, together with the expense to each party of litigating this case at trial, the court finds that the settlement agreement's proposed relief, which represents nearly 6% of potential recovery, falls within the range of possible approval.  The finding is consistent with numerous other cases in which courts have determined that the risk of recovering nothing at trial and the costs warrant significantly reduced class settlements.  See, e.g., In re Uber FCRA Litig., 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (approving a settlement worth less than 7.5% of the possible verdict where the class faced "substantial risks and obstacles" to prevailing at trial, as well as "the inevitable expense of litigating a large, complex case through trial"); Balderas v. Massage Envy Franchising, LLC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (approving a settlement representing 5% of the maximum recovery in light of "the strengths of plaintiff's case and the risks and expense of continued litigation").

#### 4.  Whether class members are treated equitably relative to each other

Rule 23(e)'s remaining consideration is whether the settlement agreement treats class members equitably relative to one another.  Fed. R. Civ. P. 23(e)(4).  One of the reasons this court denied plaintiff's first motion was its concern that the distribution formula produced inequities, which ultimately bares on the fairness of the settlement.  The existence of inequities, in and of themselves, are not necessarily fatal to settlement approval, especially where variances are likely to be minor and alternative distribution formulas would raise the cost of settlement thereby minimizing class members' net relief.  See, e.g., McHorney v. GameStop Corp., 2010 WL

1   11549399, at *4 (C.D. Cal. June 17, 2010), citing <u>Alleyne v. Time Moving & Storage Inc.</u>, 264

2   F.R.D. 41, 52 (E.D.N.Y. 2010) ("the adequacy of an allocation plan turns on whether counsel

3   ha[ve] properly apprised [themselves] of the merits of all claims, and whether the proposed

4   apportionment is fair and reasonable in light of that information").  Per the court's request,

5   plaintiff's renewed motion provided additional information regarding class members' range of

6   hourly pay rates.  (ECF No. 28-2 at 14, ¶ 32) (describing the range of hourly rates of pay as $10

7   to $25.99, with the average rate of pay $13.72.  Most potential class members (80%) were paid at

8   rates between $11 and $16.87 per hour.  (<u>Id.</u>)

9       Still, counsel argues, the per work week, pro rata distribution formula is most fair and

10  efficient "where taking into account individual changes in hourly rates of pay (which often

11  change multiple times by very small increments for each individual employee in the course of a

12  class period), would introduce multiple variances and be incredibly cumbersome to determine and

13  calculate, raising exponentially the costs of settlement administration and minimizing the

14  recovery to the class members, and thus would not be a workable settlement distribution

15  approach." (<u>Id.</u> at 14, ¶ 33.)  The court agrees with counsel that any existing variances regarding

16  rates of pay are unlikely to render the distribution of the settlement unfair.  Accordingly, the court

17  finds the settlement is "within a range of possible judicial approval."  <u>Wright v. Linkus Enters.,</u>

18  <u>Inc.</u>, 259 F.R.D. 468, 472 (E.D. Cal. 2009).[3]

19                      i.   <u>Waiting time penalties subclass</u>

20      Another concern with the proposed distribution formula was the potential for disparate

21  treatment of those employees who ended their employment with defendant during the class period

22  (thereby warranting waiting time penalties) and those who continued working for defendant (and

23  thus were not entitled to waiting time penalties).  (ECF No. 26 at 26.)  Under the distribution

24  formula, the settlement allocation awarded for waiting time penalties would potentially be shared

25  _____

    [3] The court notes that plaintiff's renewed motion fails to "describe the range of hours worked by
26  any individual class members," as requested by this court.  (ECF No. 26 at 26.)  However, the
    court agrees with plaintiff that the heightened cost of a more nuanced settlement approach that
27  considers variances in the hours worked per week would likely detract from the settlement and be
    unreasonable, particularly given the weaknesses in plaintiff's claims and low likelihood of
28  plaintiff's success on the merits.  (<u>See</u> ECF No. 28-1 at 22-23.)

1    with individuals who were not entitled to them.  (Id.)  The settlement agreement has been revised

2    to include a waiting time penalties subclass, such that the portion of the net settlement awarded

3    for waiting time penalties (10%) will only be distributed amongst the entitled individuals.  (ECF

4    No. 28-2 at 80, ¶¶ 42-43.)  The creation of this subclass quells the court's initial concerns that the

5    waiting time penalties would be unfairly distributed to those who were not entitled to them.[4]

6                    B.  Settlement of PAGA claims

7           Unlike Rule 23 class settlements, neither the California legislature nor courts have

8    identified a clear standard for approving PAGA settlements.  Haralson v. U.S. Aviation Servs.

9    Corp., 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019) (quoting Jordan v. NCI Grp., Inc., No. 2018

10   WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018)).  When reviewing PAGA settlements, district courts

11   typically ask whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and

12   adequate."  See Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal. June 27,

13   2022).

14          Courts are generally skeptical of PAGA settlements that fall under 1% of the total value of

15   a PAGA claim.  Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 940 (N.D. Cal. 2016) (finding

16   problematic, among other things, the "seemingly arbitrary reduction of [the PAGA] penalty to a

17   miniscule portion of the settlement amount – $ 122,250, which is less than one percent of the

18   total").  Here, the total maximum potential penalty exposure for plaintiff's PAGA claim is

19   $10,808,736.  (ECF No. 28-2 at 13, ¶ 29.)  The settlement agreement provides that $37,500 of the

20   gross settlement amount will be allocated for payment under the PAGA.  (Id. at 95, ¶ 29.)  Thus,

21

22   [4] Because the waiting time penalties subclass was created to lessen disparities while preserving
     use of the efficient pro rata distribution formula, it is the court's view that the waiting time
23   penalties subclass is a "permissive" subclass, and not a "compulsory" subclass.  Thus, the court
     need not independently evaluate whether the waiting time penalties subclass meets the Rule 23(a)
24   requirements of commonality, numerosity, typicality, and adequacy.  See Am. Timber & Trading
     Co. v. First Nat'l Bank of Oreg., 690 F.2d 781, 787 n.5 (9th Cir. 1982) (concluding that because
25   subclassing was permissive under Rule 23(d), it need not be evaluated separately for
     commonality, numerosity, typicality, and adequacy); see Newberg and Rubenstein on Class
26   Actions § 7:29 (6th ed.) (differentiating between compulsory and permissive subclasses and
     stating "[s]ubclassing is not necessary but is permitted to assist a court in managing complex
27   litigation in a variety of circumstances in which subclasses would promote efficiency.")

28

                                                      11

1 | the PAGA settlement amount represents less than 1% of the total maximum PAGA penalties.

2 |       The court finds that, despite the low PAGA payment, the proposed settlement falls within

3 | the range of reasonableness.  As previously discussed, given the claims' many weaknesses, the

4 | class settlement is "relatively substantial."  See Viceral v. Mistras Grp., Inc., 2016 WL 5907869,

5 | at *8–9 (N.D. Cal. Oct. 11, 2016) (approving a 0.15% PAGA as "relatively substantial" recovery

6 | where plaintiff's class faced significant risks to success on the merits and extensive evidence

7 | about compliant policies); Rivera v. Marriott Int'l, Inc., 2023 WL 3766504, at *8 (C.D. Cal. June

8 | 1, 2023) (granting preliminary settlement approval where weaknesses in plaintiff's claims

9 | plausibly warranted reduction in the PAGA allocations).  In addition, the LWDA was properly

10 | notified of the settlement and has not objected or commented, which favors settlement approval.

11 | (ECF No. 28-2 at 15, ¶ 39.)  See, e.g., Jordan v. NCI Grp., Inc., 2018 WL 1409590, at *3 (C.D.

12 | Cal. Jan. 5, 2018) ("[a]dditionally, the Court finds it persuasive that the LWDA was permitted to

13 | file a response to the proposed settlement and no comment or objection has been received.").

14 |       Further, the parties addressed the court's concerns that the proposed agreement did not

15 | adequately communicate that individuals would be unable to opt out of the PAGA settlement.

16 | The revised the settlement agreement clarifies that the PAGA release of claims is distinct from

17 | the class release of claims, and that individuals may not opt out of the release of PAGA claims.

18 | (ECF No. 28-2 at 77, ¶ 28 and 89, ¶ 12.)  The agreement has also been updated with separate

19 | definitions for class settlement members and PAGA settlement members and clarifies the

20 | applicable PAGA period for PAGA settlement members.  (Id. at 77, ¶¶ 25-29.)  Finally, the

21 | settlement agreement clarifies that there will be separate settlement payments for the class and

22 | PAGA portions of the settlement.  (Id. at 76-77, ¶¶ 18, 24.)

23 |       Last, the court notes that the revised settlement agreement provides a mechanism for

24 | distributing the PAGA payment:

25 | 
26 | 
27 | 
28 | 

> PAGA Payments to PAGA Settlement Members shall be mailed by regular First-Class. U.S. Mail to each PAGA Settlement Member's last known mailing address within seven (7) calendar days after Defendant makes the final settlement payment. All PAGA Payments to PAGA Settlement Members will be allocated as one hundred percent (100%) statutory penalties.

1    (Id. at 92, ¶ 18.)  Accordingly, the court finds that the settlement agreement and notice of the

2    PAGA claims is fair, reasonable, and adequate for purposes of preliminary approval.

3                    C.  The proposed class notice is reasonable

4          For proposed settlements under Rule 23, "the court must direct notice in a reasonable

5    manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  A

6    class action settlement notice "is satisfactory if it generally describes the terms of the settlement

7    in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

8    be heard."  Churchill Vill., LLC v. Gen. Elec., 561 F.3d 566, 575 (9th Cir. 2004) (internal

9    quotations and citations omitted).

10         The court is satisfied that the class action settlement notice satisfactorily describes the

11   terms of the settlement.  The settlement notice has been updated per instructions from the court

12   and mirrors the revisions made to the settlement agreement.  (See ECF No. 28-2 at 103-10.)

13   Specifically, the parties added a fourth row to the summary chart of "options available to you" to

14   reflect a class member's fourth option to "dispute the information contained in the Notice of Class

15   Action Settlement," referring to the number of workweeks worked during the class period.  (Id. at

16   183.)  The chart has also been amended to read:  "To opt out, object, or dispute your employment

17   dates, you must act by _____."  (Id.)  Finally, the class notice was revised to list not just the total

18   number of workweeks worked during the class period but also the recipient's actual dates of

19   employment as shown on defendant's records.  (Id. at 181.)

20         Further, the notice clearly states that, in event the class member opts out of the settlement,

21   the request for exclusion will not apply to the PAGA claim and the PAGA settlement member

22   will still receive a PAGA payment release PAGA claims.  (Id. at 185.)

23         Accordingly, the court finds that the proposed class notice, as revised, is satisfactory.

24                    D.  Subclasses listed in the Second Amended Complaint

25         The parties stipulated that, as a material term of the settlement agreement, the parties shall

26   file the Second Amended Complaint (SAC), which relates back to the filing of the original

27   complaint for purposes of the applicable statute of limitations of the causes of action alleged.  (Id.

28   at 80, §II.1.)  Defendant will be deemed to have generally denied the allegations of the SAC

1  without the need to file and serve an answer.  (Id.)  The court directs plaintiff to file the SAC at

2  pages 125-148 of ECF No. 28-2.  However, the court requires that one modification be made

3  prior to filing, as the SAC lists five subclasses for which plaintiff has never sought certification.

4  (See id. at 132-133, ¶ 25, listing subclasses for each of the labor violation claims).  For sake of

5  clarity and consistency, the court directs service of the SAC on the condition that the parties strike

6  the five subclasses from the SAC.

7     IV.   Conclusion

8        For the above reasons, plaintiff's motion for preliminary approval of settlement (ECF No.

9  28) is GRANTED.

10                               **ORDER**

11     1.   The court reiterates the following findings and rulings from its July 19, 2022 order

12          (ECF No. 26 at 37):

13          a.   The court conditionally certifies and approves, for settlement purposes

14               only, the following settlement class: "All current and former non-exempt,

15               hourly Night Team Merchandising Execution Associates who worked for

16               Home Depot in California between April 3, 2016 and November 1, 2021."

17          b.   The Markham Law Firm is appointed as class counsel.

18          c.   Jorge Almanzar is appointed as the class representative.

19     2.   The court hereby GRANTS plaintiff's motion for preliminary settlement approval.

20          a.   For purposes of this settlement, plaintiff is ordered to file the second

21               amended complaint attached to the settlement agreement at ECF No. 28-2

22               at 125-148, but subject to the modification set forth in Section III.D of this

23               order.

24          b.   The court appoints the CPT Group, Inc. as the settlement administrator.

25          c.   The court approves, as to form and content, the notice to class members in

26               substantially the form attached to the settlement agreement, ECF No. 28-2

27               at 102.

28          d.   The court approves the procedure for settlement class members to request

14

exclusion from the settlement as set forth in the notice to class members.

e.   The court approves the procedure for settlement class members to object to the settlement as set forth in the class notice to class members.

f.   The court directs the mailing of the notice to class members by U.S. first class mail to the settlement class members in accordance with the implementation schedule set forth in the table below.

g.   The court finds that the dates selected for the mailing and distribution of the notice to class members, as set forth in the implementation schedule, meet the requirements of due process and provide the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

h.   The court orders that pursuant to the California Private Attorneys General Act, Labor Code §§ 2698, et seq. ("PAGA"), statutory notice of this Settlement has been and will continue to be given to the Labor & Workforce Development Agency.

3.   The court orders the following implementation schedule for further proceedings:

| Preliminary Approval | July 6 |
|---|---|
| Deadline for Plaintiff to File SAC | 2 court days from Preliminary Approval (by July 10, 2023) |
| Deadline for Defendant to Provide Class Information to Settlement Administrator. | 7 business days from Preliminary Approval (by July 17, 2023) |
| Deadline to Mail Notice to Class Members | 30 calendar days from Preliminary Approval (by August 5, 2023) |
| Deadline for Class Members to Postmark and/or Fax Any Request for Exclusion | 45 calendar days from mailing of Notice (judged by postmark / fax stamp date), unless extended by re-mailing (by September 19, 2023) |

| Deadline for Class Members to Postmark and/or Fax Any Objection | 45 calendar days from mailing of Notice (judged by postmark / fax stamp date) (by September 19, 2023) |
|---|---|
| Deadline for Class Counsel to file Motion for Final Approval of Class Settlement | By November 28, 2023 |
| Deadline for Class Counsel to file Motion for Class Counsel Award | At least 14 calendar days before Class Members' deadline to file an objection to the Settlement expires (by September 5, 2023) |
| Deadline for Class Counsel and/or Defendant's Counsel to file a response to any objection | No later than 10 court days before the Final Approval Hearing (December 22, 2023). |
| Final Approval Hearing | <u>January 2, 2024</u> |

IT IS FURTHER ORDERED that:

  a. If the court does not execute and file an order of final approval and judgment, or if the effective date of settlement, as defined in the settlement agreement, does not occur for any reason, the settlement agreement and the proposed settlement that is the subject of this order shall become null, void, unenforceable and inadmissible in any judicial, administrative or arbitral proceeding for any purpose, and all evidence, court orders and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the parties to the litigation, as more specifically set forth in the settlement agreement.

  b. Pending further order of this court, all proceedings in this matter except those contemplated herein and in the settlement agreement are hereby STAYED.

  c. The court expressly reserves the right to adjourn or continue the final fairness hearing from time to time without further notice to members of the

settlement class.

        d.  The parties shall follow the deadlines set herein, as delineated by the Settlement Agreement.  A fairness hearing is scheduled for January 2, 2024, at 9:00 a.m., in Courtroom 25 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814.

Dated:  July 6, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

17