1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JORGE ALMANZAR, on behalf of            No.  2:20–cv–0699–KJN
     himself and all others similarly situated,
12                                           FINAL APPROVAL OF CLASS ACTION
                        Plaintiffs,          AND PAGA SETTLEMENT; MODIFIED
13                                           ORDER GRANTING ATTORNEYS' FEES,
           v.                                COSTS, AND INCENTIVE AWARD
14
     HOME DEPOT U.S.A., INC.,
15
                        Defendant.
16

17

18         Presently pending before the court is plaintiff's unopposed motion for certification of a

19   Rule 23 class, final approval of the parties' class action and PAGA settlement, and award of fees,

20   costs, and incentive payment in this labor dispute.[1]  (ECF Nos. 33, 34.)  The court held a fairness

21   hearing on January 2, 2024, and no written or oral objections were asserted.

22         For the following reasons, the court CERTIFIES the settlement class; FINDS the class

23   notice was the best practicable; APPROVES the class action and PAGA settlement as fair,

24   reasonable, and adequate; AWARDS class counsel MODIFIED attorneys' fees; GRANTS the

25   request for reimbursement of costs and administrator expenses; and GRANTS the request for a

26   service award to the named plaintiff.

27
     _____
28   [1] The parties previously consented to the jurisdiction of a magistrate judge for all purposes, 28
     U.S.C. § 636(a), and the case was reassigned to the undersigned.  (See ECF Nos. 23, 24, 25.)

                                                   1

1  **I.      BACKGROUND**

2          Plaintiff filed this putative class action against defendant Home Depot on April 3, 2020,

3  alleging defendant failed to: 1) provide class members with compliant meal periods; 2) provide

4  class members with compliant rest periods; 3) pay class members overtime wages; 4) reimburse

5  class members necessarily incurred business expenses; 5) timely pay all class members wages due

6  upon termination; 6) furnish timely and accurate wage statements to class members; and thus

7  violated California's Unfair Competition Law (count 7); for which plaintiff seeks PAGA

8  penalties (count 8).  (ECF No. 1).  The class, defined as "all current and former non-exempt,

9  hourly Night Team Merchandising Executive Associates who worked for Home Depot in

10 California between April 3, 2016, and November 1, 2021."  (Id. at 7, ¶ 23;) (ECF No. 26 at 4.)

11         The parties agreed to settle this case for a non-reversionary sum of $750,000, inclusive of

12 the PAGA payments.  (ECF No. 28-2 at 91, ¶ 16.)[2]  After deductions for an incentive award,

13 attorneys' fees, litigation costs, settlement administrator fees, and the PAGA payment to the

14 LWDA (assuming full approval of the requests), the court calculates a net settlement fund of

15 $424,601.28.  (ECF No. 33-5 at ¶ 16.)  The settlement administrator estimates the "average

16 Individual Settlement Payment to each Settlement Class Member is estimated to be $174.97, and

17 the highest is estimated to be $1,003.35."  (Id. at ¶ 14.)  The net settlement amount represents

18 approximately 6 percent of the total maximum realistic potential liability for plaintiff's class

19 claims ($12,635,042).  (ECF No. 34-2 at ¶ 18.)

20         On July 6, 2023, following supplemental briefing and revisions of the settlement

21 agreement, the court preliminarily approved the settlement in this action.  (ECF No. 31.)  The

22 court conditionally certified the settlement class and appointed plaintiff's counsel as class

23 counsel, plaintiff as the class representative, and CPT Group, Inc. as settlement administrator.

24 (Id.)  Further, the court approved the proposed class notice, and ordered a distribution of the

---

25 [2] Plaintiff filed a copy of the settlement agreement along with this instant motion.  (ECF No. 34-
26 4, Proposed Order.)  The settlement agreement is substantively identical to the settlement
   agreement submitted with the motion for preliminary approval, however the page numbers in the
27 settlement agreement submitted in the instant motion are illegible.  (See ECF Nos. 28-2, 34-4).
   Therefore, for ease of reference, the court cites to the settlement agreement attached to the motion
28 for preliminary approval for purposes of this order, see ECF No. 28-2.

notice plan as provided in the settlement agreement.  (Id.)

The settlement administrator mailed the notices to the settlement class on August 7, 2023. (ECF No. 34-3, ¶ 3.) The notice informed the class members of this lawsuit and the settlement, and advised class members that they had the right to opt out of the settlement or object to its terms.  (ECF No. 33-5.)  During the hearing, plaintiff's counsel confirmed that not a single class member objected to the settlement, and not a single one of over 2,000 class members opted out of it.  (See ECF No. 34-3, ¶¶ 5-6.)

## II.    DISCUSSION

The parties seek:  (A) final certification of the Rule 23 settlement class, and reaffirmation of plaintiff's appointment as class representative and appointment of her counsel as class counsel; (B) final approval of the Rule 23 class action settlement; (C) final approval of the PAGA settlement; and (D) approval of the requests for attorneys' fees, counsels' costs, administrator's costs, and incentive award.  In addition, the parties seek an order for the administrator to distribute payments to the class members and the State of California in accordance with the settlement agreement, and order dismissing this case with prejudice.  (ECF Nos. 33, 34.)

### Legal Standards – Rule 23 Class Settlements and PAGA Settlements

When parties seek approval of a class action settlement, courts must analyze "both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see Rule 23(e)[3] ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval.").  Accordingly, the court considers whether the class meets the certification requirements of Rule 23 and whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 952.

Cases such as this often include a claim for penalties under the California Labor Code's Private Attorneys General Act, which are distinct from class claims.  See Kim v. Reins Int'l Cal., Inc., 9 Cal. 5th 73, 86-87 (2020) ("[A] representative action under PAGA is not a class action,

---

[3] Citations to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

[but rather one] on behalf of the government.") (quotations omitted).  This is because "[p]laintiffs

may bring a PAGA claim <u>only</u> as the state's designated proxy, suing on behalf of <u>all</u> affected

employees."  <u>Id.</u> (emphases original); <u>see</u> <u>Viking River Cruises, Inc. v. Moriana</u>, 142 S. Ct. 1906,

1914 (2022) (explaining how California law characterizes PAGA as creating a "type of qui tam

action" with the representative private plaintiff acting in place of the government) (quoting

<u>Iskanian v. CLS Transp. Los Angeles, LLC</u>, 59 Cal. 4th 348, 382 (2014) (overruled on other

grounds)).  Because a PAGA claim is not "a collection of individual claims for relief" like a class

action, <u>Canela v. Costco Wholesale Corp.</u>, 971 F.3d 845, 855 (9th Cir. 2020) (discussing <u>Kim</u>'s

holding), PAGA claims "need not satisfy Rule 23 class certification requirements," <u>Hamilton v.</u>

<u>Wal-Mart Stores, Inc.</u>, 39 F.4th 575, 583 (9th Cir. 2022).  However, like class action settlements,

PAGA <u>settlements</u> must be approved by the court.  Cal. Lab. Code § 2699(l)(2).  Courts in this

circuit apply "a Rule 23-like standard," asking whether the settlement of the PAGA claims is

"fundamentally fair, reasonable, and adequate."  <u>See</u> <u>Haralson v. U.S. Aviation Servs. Corp.</u>, 383

F. Supp. 3d 959, 972 (N.D. Cal. 2019).

**<u>Analysis</u>**

**A.  Class Certification under Rule 23; Class Notice, Counsel, and Representative**

The court previously found:  (i) the requirements of Rule 23(a) and (b)(3) had been met

regarding the proposed class; (ii) plaintiff's counsel was adequate to act as class counsel;

(iii) plaintiff was an appropriate representative for the class; and (iv) the proposed notice was the

best practicable under the circumstances.  (ECF No. 31.)  The court's findings on these issues have

not changed, and no objections to these issues were raised.  Accordingly, there is no need for the

court to repeat the prior analysis here.  Thus, for the reasons stated in the previous order, the

findings on class certification, counsel, representative, and notice are reaffirmed and finalized for

purposes of this settlement.  <u>See, e.g.</u>, <u>Carlin v. DairyAmerica</u>, 380 F. Supp. 3d 998, 1008 (E.D.

Cal. 2019) ("As a preliminary matter, the court notes that it previously certified a Rule 23(b)(3)

class.  Thus, it need not analyze whether the requirements for certification have been met and

may focus instead on whether the proposed settlement is fair, adequate, and reasonable.")

(quoting <u>Harris v. Vector Marketing</u>, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb. 6, 2012); <u>In re</u>

1   Apollo Group Inc. Securities Litigation, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012) (same).

2       **B. Final Approval of Proposed Settlement**

3       In considering whether a class action settlement is "fundamentally fair, adequate, and

4   reasonable," Staton, 327 F.3d at 952, Rule 23 requires the court to consider whether:  (1) the class

5   representatives and class counsel have adequately represented the class; (2) the proposal was

6   negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal

7   treats class members equitably relative to each other.  Rule 23(e)(2).

8       Having already completed a thorough preliminary examination of the agreement, the court

9   reviews it again, mindful that the law favors the compromise and settlement of class action suits.

10  See In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) (reminding that the Ninth

11  Circuit has declared a strong judicial policy in favor of settlement of class actions); Class

12  Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (same).  Ultimately, "the

13  decision to approve or reject a settlement is committed to the sound discretion of the trial judge

14  [who] is exposed to the litigants and their strategies, positions, and proof."  Staton, 327 F.3d at

15  953.

16      **1. Adequacy of representation**

17      To determine adequacy of representation under Rule 23(e)(2), the court may consider

18  whether the interests of the named plaintiff are "aligned with the interests of the class members."

19  See Cottle v. Plaid Inc., 340 F.R.D. 356, 376 (N.D. Cal. 2021).  In addition, a finding that "class

20  counsel are experienced and competent" supports a conclusion that the class is adequately

21  represented.  Id. (citing In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995) ("Parties

22  represented by competent counsel are better positioned than courts to produce a settlement that

23  fairly reflects each party's expected outcome in litigation.")).  This first factor is redundant of

24  Rule 23(a)(4) and 23(g).  Mandalevy v. Bofi Holding, Inc., 2022 WL 1556160, at *6 (S.D. Cal.

25  May 17, 2022); 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020)).

26      Here, plaintiff's interests are aligned with those of class members, as they share a

27  common interest in challenging the alleged wrongful wage and hour policies and seek the same

28  relief under the same set of facts and legal theories.  (See ECF No. 32.)  Further, class counsel are

clearly experienced in class action litigation.  (See ECF No. 34-2 (counsels' declaration detailing

other cases where he has been appointed class counsel in wage and hour actions).)  Because

plaintiff showed the adequacy prerequisite was satisfied under Rule 23(a), the court finds the

requirement under Rule 23(e)(2) is also satisfied.  See Flores v. Dart Container Corp., 2021 WL

1985440, at *5 (E.D. Cal. May 17, 2021) ("Because the court has found that the proposed class

satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule

23(e)(2)(A) is also met").).

### 2.  Arm's Length Negotiation

The second factor requires the court to consider whether the proposed settlement was

negotiated at arm's length.  Rule 23(e)(2)(B); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965

(9th Cir. 2009) (noting the importance of evaluating whether the settlement was the product of

"an arms-length, non-collusive, negotiated resolution").  The inquiry of collusion addresses the

possibility that the settlement agreement is the result of either "overt misconduct by the

negotiators" or improper incentives of class members at the expense of others.  Staton, 327 F.3d

at 960.  The Ninth Circuit has observed that "settlement class actions present unique due process

concerns for absent class members" because the "inherent risk is that class counsel may collude

with the defendants, tacitly reducing the overall settlement in return for a higher attorneys' fee."

In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation

marks, citations omitted).  Thus, the court is to examine the agreement for "subtle signs" of self-

dealing by counsel, such as where:  (a) "counsel receive a disproportionate distribution of the

settlement, or [] the class receives no monetary distribution but class counsel are amply

rewarded"; (b) payment of attorneys' fees occurs "separate and apart from class funds" and goes

unopposed (a "clear sailing" agreement), which "carries the potential of enabling a defendant to

pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement

on behalf of the class"; or (c) "the parties arrange for unused funds to revert to defendants rather

than be added to the class fund."  Id. at 947 (cleaned up).

Here, the proposed settlement is the product of lengthy negotiations between the parties

after the exchange of sufficient discovery.  The court notes none of the "subtle signs" are present

here, as counsels' attorney fee request is typical for these kinds of wage-and-hour claims (ECF No. 33) and there is no reversion of funds to defendants (ECF No. 28-2 at 91, ¶ 16).  Thus, the court finds adequate negotiation here.  See, e.g., Chambers v. Whirlpool Corp., 980 F.3d 645, 669 (9th Cir. 2020) (finding no collusion where, among other things, "the parties settled via arm's length negotiations before an experienced mediator"); Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties").

### 3.  Adequacy of Relief Provided to the Class

The "adequacy of relief" determination requires consideration of four sub-factors:

    i.      the costs, risks, and delay of trial and appeal;
    ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii.    the terms of any proposed award of attorneys' fees, including timing of payment; and
    iv.    any agreement required to be identified under Rule 23(e)(3).

See Rule 23(e)(2)(C).  The amount offered in the proposed settlement agreement is generally the most important consideration of any class settlement.  See Bayat v. Bank of the West, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

### i.  Costs, risks, and delay vs. settlement amount and scope of released claims

In determining whether the amount offered is fair and reasonable, courts compare the proposed settlement to the best possible outcome for the class.  See Rodriguez, 563 F.3d at 964. A "central concern" in evaluating a class settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome."  Feltzs v. Cox Comm's Cal., LLC, 2022 WL 2079144 at *9 (C.D. Cal. Mar. 2, 2022) (quoting Rule 23(e), 2018 Advisory Committee Notes [modification in original].)  The inquiry is one of balance, and "a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000).  Approval of settlement is "preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, the parties agreed to settle this case for a non-reversionary sum of $750,000, inclusive of the PAGA payments, for the 2,184 class members. (ECF No. 28-2 at 91, ¶ 16.) (See also ECF No. 34-1 at 7; 33-5 at ¶ 7.)  After deductions for an incentive award, attorneys' fees, litigation costs, settlement administrator fees, and the PAGA payment to the LWDA (assuming full approval of the requests), the court calculates a net settlement fund of $424,601.28.  (ECF No. 33-5 at ¶ 16.)  The settlement administrator estimates the "average Individual Settlement Payment to each Settlement Class Member is estimated to be $174.97, and the highest is estimated to be $1,003.35."  (Id. at ¶ 14.)

The net settlement amount represents approximately six percent of the total maximum realistic potential liability for plaintiff's class claims ($12,635,042).  (ECF No. 34-2 at ¶ 18.)  The estimates are based on counsel's investigation of the claims in this action, a careful review of documents, and an expert analysis of a class-wide sample of records.  (Id. at ¶ 5.)  The court concurs with counsels' analysis concerning the significant weaknesses in plaintiff's case, which includes not only the general uncertainties with litigating a case through trial, but also the fact that payroll records showed frequent overtime payments, the existence of a facial policy prohibiting cell-phone and supply of alternative tools to make the use of a personal phone unnecessary, and difficulties showing violations of members' meal and rest breaks on a class-wide basis.  (Id. at ¶¶ 8-17.)  The settlement amount results in a recovery that is in range of settlements that have been approved by California courts.  See, e.g., In re Uber FCRA Litig., 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (approving a settlement worth less than 7.5% of the possible verdict where the class faced "substantial risks and obstacles" to prevailing at trial, as well as "the inevitable expense of litigating a large, complex case through trial"); Balderas v. Massage Envy Franchising, LLC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (approving a settlement representing 5% of the maximum recovery in light of "the strengths of plaintiff's case and the risks and expense of continued litigation").  The court also finds the settlement amount to be fair and reasonable in light of what the class "actually gave up by settling."  Campbell v. Facebook, Inc., 951 F.3d 1106, 1123 (9th Cir. 2020).

The settlement agreement provides that each class member, by accepting their portion of

the settlement and not opting out, will release defendants from:

> [A]ny and all claims that are asserted in the operative complaint and which could have been asserted based on the facts alleged in the complaint, which are or could be the basis of claims for: (1) failure to pay all regular wages, overtime wages, and minimum 2 wages; (2) failure to properly calculate premium pay; (3) failure to provide proper meal periods, 3 and to properly provide premium pay in lieu thereof; ( 4) failure to provide proper rest periods, and 4 to properly provide premium pay in lieu thereof; ( 5) failure to pay all wages timely at the time of 5 termination; (6) failure to provide complete, accurate, or properly formatted wage statements; (7) 6 failure to reimburse business expenses, (8) unfair business practices that could have been premised 7 on the claims, causes of actions or legal theories of relief described above or any of the claims, 8 causes of actions or legal theories of relief that were pleaded in the operative complaint; (9) any 9 other claims or penalties under the wage and hour laws pleaded in the Action; and (10) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief.

(ECF No. 28-2 at 78, ¶ 36).  This language is sufficient to allow any future potential litigant to raise the scope of the release so all can determine the preclusive effect of the agreement on whatever facts present themselves.  Thus, the court finds the scope of release to be fair and reasonable when compared to the amount of the settlement.  Campbell, 951 F.3d at 1123.

Finally, though the parties have engaged in discovery allowing them to broadly evaluate the case's merits and defendants' potential maximum exposure, the court recognizes that significant discovery still lies ahead.  When coupled with this court's heavily impacted caseload and the risk of further delay in a post-trial appeal before the Ninth Circuit, it is clear that these significant delays would persist if the parties decided to take this case to trial.

Given the above, the costs, risks, and delay of any potential trial weigh in favor of approval of the settlement.

### ii.    Effectiveness of proposed method of distributing relief

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible."  Hilsley v. Ocean Spray Cranberries, Inc., 2020 WL 520616 at *7 (S.D. Cal. Jan. 31, 2020) (citing "Final approval criteria— Rule 23(e)(2)(C)(ii): Distribution method," 4 Newberg on Class Actions § 13:53 (5th ed.)).  "Often it will be important for the court to scrutinize the method of claims

9

1    processing to ensure that it facilitates filing legitimate claims."  Rule 23(e), 2018 Advisory

2    Committee Notes.  The proposed method for processing claims "should deter or defeat unjustified

3    claims, but the court should be alert to whether the claims process is unduly demanding."  Id.

4            Under the settlement agreement, class members did not have to submit claims to receive

5    payment; instead, they were identified through defendants' employment records, received a notice

6    calculating each member's potential award based on how many workweeks worked during the

7    class period (as determined by the employment records), and were given an opportunity to dispute

8    the calculations.  (ECF No. 28-2 at 87, ¶¶ 6-13.)  The settlement administrator has notified all

9    class members in the best manner practicable, and none receiving the notice chose to opt out or

10   object to the agreement's terms.  (ECF No. 34-3.)  This method of distributing relief is "simple

11   and effective."  Loreto v. Gen. Dynamics Info. Tech., Inc., 2021 WL 1839989, at *10 (S.D. Cal.

12   May 7, 2021); Jackson v. Fastenal Co., 2021 WL 5755583 at *11 (E.D. Cal. Dec. 3, 2021)

13   (finding "the proposed method of distributing relief is effective and weighs in favor of a finding

14   that the settlement agreement is fair, reasonable and adequate" where the class members did not

15   have to file a claim).  Thus, this factor weighs in favor of final approval of the settlement.

16           **iii.    Terms of proposed award of attorneys' fees**

17           When evaluating the terms of a settlement, "courts must scrutinize 'the terms of any

18   proposed award of attorneys' fees.'"  McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir.

19   2021) (quoting Rule 23(e)(2)(C)(iii)).  The Ninth Circuit has explained, "the new Rule 23(e)

20   makes clear that courts must balance the proposed award of attorneys' fees vis-à-vis the relief

21   provided for the class in determining whether the settlement is 'adequate' for class members."  Id.

22   In settlements that produce a common fund, courts may use either the lodestar method or

23   percentage-of-recovery method to determine the reasonableness of attorneys' fees.  In re

24   Bluetooth, 654 F.3d at 942.  Under the percentage method, "courts typically calculate 25% of the

25   fund as the 'benchmark' for a reasonable fee award."  Id.  However, a departure may be justified

26   based on "special circumstances."  Id.  The California Supreme Court also has endorsed fee

27   awards based on a percentage of recovery and use of a lodestar crosscheck.  See Laffitte v. Robert

28   Half Internat. Inc., 1 Cal. 5th 480, 486, 504-06 (2016) (approving a fee award of one-third of the

                                                   10

gross settlement in a wage and hour class action using a percentage method).

Here, the agreement provides that class counsel will request attorneys' fees up to 33.33% percent (one-third) of the gross settlement amount, valued at $250,000.00.  (ECF No. 28-2 at 94, ¶ 25.)  This is, in fact, the amount counsel now seeks.  (ECF No. 33.)  Counsels' request is not so disproportionate to the relief provided to the class that it calls into question the fairness of the proposed settlement.  Baten v. Michigan Logistics, Inc., 2022 WL 17481068, at *6 (C.D. Cal. Dec. 6, 2022) ("The requested attorneys ' fees of one-third of the Settlement does not represent a disproportionate distribution for purposes of determining collusion.").  This also comports with California precedent.  Laffitte, 1 Cal. 5th at 504-06.  Further, as the settlement agreement awards each class member a portion of the fund on a pro rata basis, any lowering of this amount by the court would allow for those unallocated funds to be distributed to class members.  Given this, the court finds counsels' fee request does not weigh against approval of the settlement.  McKinney-Drobnis, 16 F.4th at 607.

### iv.    Agreements made in connection with the proposal

The court must consider any agreement that is required to be identified under Rule 23(e)(3).  Rule 23(e)(2)(C)(iv).  Specifically, "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Rule 23(e)(3).  Aside from what has been identified in this order regarding class counsels' fees and costs, administrator costs, and incentive awards, the settlement agreement constitutes the entire agreement.  Thus, this weighs in favor of approving the settlement.

### 4.  Equitable Treatment of Class Members

The fourth factor addresses whether the proposed settlement agreement "treats class members equitably relative to each other." See Rule 23(e)(2)(D).  "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." Hilsley, 2020 WL 520616 at *7 (citation omitted).  This inquiry considers both equity across sub-categories of the class, and equity between class representatives and unnamed class members.  Id.

Here, the settlement agreement does not unfairly discriminate between any member of the

class, as it provides for a pro rata distribution of the fund based on the number of workweeks each

class member worked.  (ECF No. 28-2 at 92, ¶ 19).)  This proposed distribution plan supports

final approval.  See Cooks v. TNG GP, 2021 WL 5139613 at *4 (E.D. Cal. Nov. 4, 2021)

(observing a calculation of payments to class members "on a pro-rata basis based on the number

of compensable workweeks each member worked . . . is fair and treats class members equitably");

Gomez-Gasca v. Future AG Mgmt. Inc., 2020 WL 6149688 at *4 (N.D. Cal. Oct. 20, 2020)

(same).

As to equitable treatment between the class representative and the class members, the

court incorporates its discussion below regarding the incentive award.  Given that the settlement

agreement does not attempt to strip the court of its discretion on this matter, this is not a source of

impermissible inequity.  Staton, 327 F.3d at 977.

**5.   Reaction of Class Members to the Settlement**

"[T]he absence of a large number of objections to a proposed class action settlement raises

a strong presumption that the terms of a proposed class action settlement are favorable to the class

members."  Nat'l Rural Telecomms., 221 F.R.D. at 529; see also Cottle, 340 F.R.D. at 376

(observing the court may assess the reaction of class members by considering "how many class

members submitted . . . objections" at the final approval stage).

After receiving the court-approved notice, class members reacted favorably to the

proposed settlement terms by not requesting exclusion or submitting objections.  (ECF No. 34-3.)

This "strongly supports settlement."  Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848,

852 (N.D. Cal. 2010); see also Taylor v. Populous Group, LLC, 2023 WL 139724, at *3 (S.D.

Cal. Jan 9, 2023) (finding the class members' reaction to the settlement—after notice of the

settlement terms and "an opportunity to express their reactions"—supported final approval where

no objections to the settlement were filed); Manzo v. McDonalds Rests. of Cal., Inc., 2022 WL

4586236, at *8 (E.D. Cal. Sept. 29, 2022) (same).  Accordingly, this factor weighs in favor of

final approval.

**C.   Settlement of PAGA Penalties Claim**

The 2AC's Eighth Cause of Action asserts a claim for PAGA penalties, on behalf of

plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code

violations asserted in the class claims.  (ECF No. 32 at 20-22.)  PAGA claims and their settlement

are fundamentally distinct from Rule 23 class claims.  See Hamilton, 39 F.4th at 583 ("Rule 23

class actions and PAGA actions are so conceptually distinct that class action precepts generally

have little salience for PAGA actions."); Canela, 971 F.3d at 852 (noting "the different remedial

schemes that exist in Rule 23 class actions and PAGA suits").

### Legal Standards

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor

code violations on behalf of herself and other current or former employees.  Cal. Lab. Code

§ 2699(a).  "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on

behalf of all affected employees."  Kim, 9 Cal. 5th at 87 (emphasis in original).  Because a PAGA

plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment

in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a

judgment in an action brought by the government."  Arias v. Superior Ct., 46 Cal. 4th 969, 986

(2009).  "Unlike a class action, there is no mechanism for opting out of a judgment entered on a

PAGA claim."  Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (4th Dist.

2021) (internal quotes omitted).  Thus, a PAGA plaintiff owes a duty both to their "fellow

aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to

the public at large because the PAGA plaintiff acts "as the statute's name suggests, as a private

attorney general."  O'Connor, 201 F. Supp. 3d at 1134.

Under PAGA's remedial scheme, civil penalties recovered are distributed between "the

aggrieved employees" (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement

of PAGA claims must be approved by the court; and the proposed settlement must be sent to the

LWDA alongside submission to the court.[4]  Cal. Lab. Code § 2699(l)(2).  Although the court

does not evaluate the settlement of PAGA claims under the Rule 23 criteria, it must still inquire

---

[4]  Class counsel states that on October 21, 2021, the proposed settlement was submitted to the
Labor and Workforce Development Agency ("LWDA").  (ECF No. 34-2 at 10, ¶ 30.)  To date,
LWDA has not objected, moved to intervene, or otherwise commented on the settlement.  (Id.)

into the fairness of the PAGA settlement.  "[I]n reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine both aspects of the settlement."  O'Connor, 201 F. Supp. 3d at 1133.  Based on the best guidance at hand, district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate."  Haralson, 383 F. Supp. 3d at 972; see Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal. June 27, 2022) (noting lack of binding standard for approving PAGA settlements and adopting "fundamentally fair, reasonable, and adequate" standard based on LWDA's O'Connor commentary).

"While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the adequacy of compensation to the class as well as the adequacy of the settlement in view of the purposes and policies of PAGA.  In doing so, the court may apply a sliding scale."  O'Connor, 201 F. Supp. 3d at 1134 (cleaned up).  "For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled."  Id.  Non-monetary relief provided through the settlement may also satisfy PAGA's interests in enforcement and deterrence.  Id. at 1134-35.  Conversely, in cases where a settlement provides "relatively modest" amounts in settlement of the class claims compared to their verdict value, and there is no non-monetary relief provided, the PAGA aspect of the settlement must stand on its own to "substantially vindicate" PAGA's policy interests.  Id. at 1135.

**Analysis**

Here, the settlement agreement provides for $37,500 in PAGA penalties, out of the gross settlement amount of $750,000.  (ECF No. 28-2, 91 at ¶ 16.)  The court is persuaded that PAGA's interests are satisfied given the difficulties plaintiff would have in litigating this case through trial and given the parties' participation in settlement talks after significant discovery and under the guidance of a neutral mediator.  O'Connor, 201 F. Supp. 3d at 1134.

Considering the other factors from Rule 23(e)(2), the court finds the PAGA portion of the settlement to be similarly fair and adequate for the PAGA members.  Though the PAGA payment will be much lower than the Rule 23 payments, this will ultimately benefit the class members, as PAGA's 75%-to-25% allocation would only shift funds away from the class members—who are

the same set of individuals as the PAGA members.  See Rodriguez v. Danell Custom Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving 0.6% PAGA payment because LWDA did not object to terms of settlement).  The LWDA did not object to the settlement.  See, e.g., Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at *2 (S.D. Cal. Sept. 18, 2018) (taking LWDA's "acquiescence as indication that the settlement is presumptively reasonable").  Finally, the parties have accounted for the distinction between Rule 23 opt outs and PAGA's opt-out bar, as the settlement agreement and notice inform as much.  Amaro, 69 Cal. App. 5th at 541 n.5.

For these reasons, the court finds the settlement of the PAGA penalties claim to be fundamentally fair, reasonable, and adequate."  See Haralson, 383 F. Supp. 3d at 972.

**D.  Attorneys' fees, costs, and incentive award**

Beyond final certification of the class and approval of the class action and PAGA settlements, plaintiff seeks an order granting: (1) an award of fees to class counsel; (2) reimbursement of litigation costs, including the settlement administrator's fees; and (3) an incentive award for the named plaintiff.  If approved, these fees would be deducted from the gross settlement amount prior to the pro rata distribution of the net fund.  (ECF No. 28-2, 91 at ¶ 16.)

**1.  Class Counsels' Fees**

Pursuant to the agreement, class counsel may seek attorneys' fees up to one-third of the gross settlement amount, or up to $250,000; counsel now seeks this amount.  (ECF No. 33-1 at 9.) Counsel maintains this is reasonable in light of the benefit provided to the class, similar awards in this district in these kinds of cases, and counsels' lodestar cross check ($162,947.25, before any multiplier and at reduced rates.)  (Id. at 19.)  For the reasons that follow, the court declines to grant attorneys' fees in the amount requested, and instead grants fees totalling 25% of the gross settlement amount—a total of $187,500.

**Legal Standards**

The Ninth Circuit and the California Supreme Court both have held that trial courts have discretion to award attorneys' fees based on either the lodestar/multiplier calculation or the percentage-of-recovery method. Bluetooth, 654 F.3d at 942; Hanlon, 150 F.3d at 1029; Laffitte v.

15

1    Robert Half Int'l Inc. 1 Cal. 5th 480, 504 (2016).  The typical range of attorney's fees approved in

2    the Ninth Circuit is 20 percent to 30 percent of the total settlement value, with 25 percent

3    considered the benchmark.  Bluetooth, 654 F.3d at 942.  Here, class counsel requests the court

4    approve a fee award of one-third of the gross settlement amount.  (ECF No. 33-1 at 9.)  As this

5    amount exceeds the "benchmark" of 25 percent, the court must determine whether the requested

6    percentage is reasonable.  Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000). See Roes v.

7    SFBSC Mgmt., LLC, 944 F.3d 1035, 1056 (9th Cir. 2019) (concluding that district court should

8    have "explained why attorneys' fees of 31.6% ($950,000 out of $3 million ...) or more were

9    justified" for purposes of performing the lodestar cross-check using a percentage of the total class

10   recovery).

11        To evaluate whether the requested percentage is reasonable, the Ninth Circuit has

12   favorably commended a district court's consideration of several factors:  (1) the results achieved,

13   (2) the risk of litigation, (3) the skill required of plaintiff's counsel and the quality of work

14   performed, (4) the contingent nature of this action, and (5) awards granted in similar cases.

15   Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).  District courts have also

16   considered the reaction of the class to the settlement.  The court addresses each factor in turn.

17                      **a.  Results Achieved**

18        "The overall result and benefit to the class from the litigation is the most critical factor in

19   granting a fee award."  In re Omnivision Techs., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

20   "Exceptional results are a relevant circumstance" to support an adjustment from the benchmark

21   award.  Vizcaino, 290 F.3d at 1048; Resnick v. Frank (In re Online DVD-Rental Antitrust

22   Litigation), 779 F.3d 934, 954-55 (9th Cir. 2015).

23        Here, the class award amounts to roughly 6 percent of potential recovery.  (ECF No. 33-1

24   at 12.  While the court agrees that these are good results in light of the obstacles and risks, the

25   court does not find this result so exceptional as to justify an upward departure from the

26   benchmark.  See Atiqi v. Calnet, Inc., No. EDCV 14-00628-VAP (SPx), 2017 WL 11645624, at

27   *7 (C.D. Cal. Aug. 22, 2017) (a settlement that was "10% of the maximum net recovery for class

28   members...would not be so exceptional as to justify a departure from the benchmark.");

Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 446 (E.D. Cal. 2013) ("the circumstances of the litigation simply do not lead the Court to conclude that the result is 'exceptional' " where the recovery for the class equaled "30% of Plaintiff's calculation of Defendant's maximum liability exposure").  Accordingly, given the relief obtained, this factor favors an award equal to the benchmark.

### b.  Risk of Litigation

The risk that litigation might result in no recovery is a significant factor in assessing the fairness and reasonableness of an award of attorney's fees.  Vizcaino, 290 F.3d at 1048; Chemical Bank v. City of Seattle, 19 F.3d 1297, 1299-1301 (9th Cir. 1994). "[T]he risk of loss in a particular case is a product of two factors (1) the legal and factual merits of the claim, and (2) the difficulty of establishing those merits." City of Burlington v. Dague, 505 U.S. 557, 562 (1992). When class counsel undertakes an "extremely risky" action, an upward departure from the benchmark is appropriate.  See Vizcaino, 290 F.3d at 1048 (an award above the benchmark was appropriate where "counsel pursued [the] case in the absence of supporting precedents," and "[t]wice plaintiffs lost in the district court—once on the merits, once on the class definition—and twice counsel succeeded in reviving their case on appeal").

As stated above, class counsels assert there was a risk that further litigation might result in no recovery for plaintiffs.  (ECF No. 33-1 at 17.)  The court agrees that class counsel would have faced significant opposition from defendant if a settlement had not been reached.  Therefore, this factor supports an upward departure from the benchmark.

### c.  Skills Required and the Quality of Work

The court also considers the skills required to prosecute and manage this litigation, as well as counsel's overall performance.  See In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (the complexity of issues and skills required may support a departure from the benchmark fee award).  The Markham Law Firm and United Employees Law (the firms lead by Counsel Markham and Counsel Haines) have decades of experience litigating wage and hour class actions. (ECF No. 33-2 at ¶¶ 13-19). The firms led by Mr. Markham and Mr. Haines have spent 410.45 hours litigating this case, not including the 20-30 hours needed to prepare for and attend the final

approval hearing and oversee settlement distribution.  (ECF No. 33-2 ¶¶ 23-26; ECF No. 33-3 ¶¶4-7.)  The skills and overall experience of the Markham Law Firm and United Employees Law Group undoubtedly benefited plaintiff and the class in securing a settlement.  However, the court is not persuaded that this case was materially more complex or difficult than other actions asserting wage-related claims to warrant attorneys' fees above the benchmark.  See Monterrubio, 291 F.R.D. at 458.  Moreover, the fact that class counsel has not identified any evidence that either firm was precluded from any other work because of this action supports the conclusion that the time and labor required was not overly burdensome.  Therefore, this factor supports an award equal to the benchmark.

### d.  Contingent Nature of this Action

The Ninth Circuit has suggested the distinction between a contingency arrangement and a fixed fee arrangement alone does not merit an enhancement from the benchmark. Bluetooth, 654 F.3d at 942 n.7 ("whether the fee was fixed or contingent" is "no longer valid" as a factor in evaluating reasonable fees) (citation omitted); cf. In re Online DVD-Rental Antitrust Litigation, 779 F.3d at 954-55 (finding the contingent nature of litigation remains a relevant factor to evaluate a request from the common fund); Clayton v. Knight Transp., No. 1:11-cv-00735-SAB, 2013 WL 5877213, at *8 (E.D. Cal. Oct. 30, 2013) (the contingent nature of a fee is an important factor in determining the fee award but risks that "are no greater than that associated with any other wage and hour action and no extraordinary circumstances exist that would support an increase from the 25% benchmark").  Here, class counsel argues that the existence of a contingency based fee supports an upward departure from the benchmark.  (ECF No. 33-1 at 17.)  However, class counsels do not identify any unusual risk with the contingent nature of their fee in this action.  Accordingly, this factor supports an award equal to the benchmark.

### e.  Awards Made in Similar Cases

Counsel lists several cases where federal courts in California awarded attorneys' fees of one-third of the gross settlement amount.  (ECF No. 33-1 at 18.)  However, counsel does not explain how any of these cases are similar to the instant action.  Therefore, this factor supports an award equal to the benchmark.

1

### f.   Reaction of the Class

2  The reaction of the class may also be taken into account when determining the

3 reasonableness of a fee request.  In re Heritage Bond Litig., No. 02-ML-01475 DT, 2005 WL

4 1594403, at *21 (C.D. Cal. Jun. 10, 2005); see Nat'l Rural Telecomm. Coop, 221 F.R.D. at 529

5 ("It is established that the absence of a large number of objections to a proposed class action

6 settlement raises a strong presumption that the terms of a proposed class settlement action are

7 favorable to the class members.").  No class member has filed an objection to the settlement

8 pending final approval.  (ECF No. 33-5.). Therefore, this factor supports an upward departure

9 from the benchmark.

10  In light of the factors discussed above, the court finds a reduction to 25% of the gross

11 settlement amount—a total of $187,500—is appropriate.  This percentage meets the Ninth

12 Circuit's benchmark.  Bluetooth, 654 F.3d at 942.  This amount also exceeds counsels' lodestar

13 cross check of $162,947.25, before any multiplier and at approved Eastern District rates.  The

14 court finds this modified amount is fair, reasonable, and adequate as required under Rule 23.

15 Class counsel's request for fees is GRANTED in the modified amount of $187,500.

16  ### 2.   Litigation and Settlement Administrator Costs

17  **Legal Standards**

18  Generally, reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Rule 54.

19 In addition, costs may be awarded under California law to an employee who prevails on a PAGA

20 claim.  See Cal. Lab. Code § 2699(g).  Attorneys may recover reasonable expenses that would

21 typically be billed to paying clients in non-contingency matters.  See Harris v. Marhoefer, 24 F.3d

22 16, 19-20 (9th Cir. 1994).  "There is no doubt that an attorney who has created a common fund

23 for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that

24 fund."  Ontiveros v. Zamora, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (citation omitted).

25  **Analysis**

26  The settlement agreement allowed class counsel to seek "litigation costs and expenses not

27 to exceed $30,000."  (ECF No. 28-2 at 91, ¶ 16.)  However, plaintiff's counsel only requests

28 actual litigation expenses and costs in this action are $7,398.72.  (ECF No. 33-1 at 20.)  These

expenses include the amounts paid for court filing fees, mediator fees, legal research charges, and delivery charges, all of which are costs normally billed to and paid by the client.  (Id.)  These costs are routinely reimbursed, and so this request is granted.  See Ontiveros, 303 F.R.D. at 375 (finding costs including to mediation, court fees, research, and expert fees were "reasonable litigation fees" and approving class counsel's request for costs).

The settlement agreement also allowed for reimbursement of the settlement administrator's costs, up to $14,250.  (ECF No. 28-2 at 91, ¶ 16.)  Plaintiffs seek $15,500 for settlement administrator costs.  (ECF No. 33-1 at 7.)  The settlement administrator's costs increased because the class size changed from 2,000 to 2,184, a case email was added, and postage increased.  (Id.; see also ECF No. 33-5 at ¶ 17.)  Settlement administrator costs are routinely reimbursed in class action settlements.  See, e.g., Rodriguez v. Nike Retail Servs., Inc., 2022 WL 254349, at *7 (N.D. Cal. Jan. 27, 2022); Local Rule 292(f)(11).  The court finds the requested costs to be reasonable and grants an award of $15,500 to CPT.

### 3.  Incentive Award

#### Legal Standards

A class representative may receive a share of class recovery above and beyond the individual claim with a service payment, also known as an "incentive payment.  Staton, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments").  However, incentive payments for class representatives are not to be given routinely.  See id. at 975 (noting that "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard"); Radcliffe v. Experian Info. Solutions, 715 F.3d 1157, 1165 (9th Cir. 2013) ("[D]istrict courts must be vigilant in scrutinizing all incentive awards.").

In evaluating a request for a service payment to a class representative, the court must consider: "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and any financial or reputational risks the plaintiff faced."  In

20

re Apple Inc. Device Performance Litig., 50 F.4th 769, 786 (9th Cir. 2022) (cleaned up).  Further, payments may recognize a plaintiff's "willingness to act as a private attorney general" in PAGA actions.  Rodriguez, 563 F.3d at 958-59.  A service payment of $5,000 for the class representative "is presumptively reasonable" in the Ninth Circuit.  Richardson v. THD At-Home Servs., 2016 WL 1366952, at *13 (E.D. Cal. Apr. 6, 2016); see also Gonzalez v. NCI Group, Inc., 2023 WL 373252, at *9 (E.D. Cal. Jan. 24, 2023) ("Courts routinely find rewards in the amount of $5,000 to be reasonable").

**Analysis**

Here, the settlement agreement allows for a class representative incentive award of $15,000; that is what plaintiff now seeks.  (ECF No. 28-2 at 91, ¶ 16.)  Plaintiff devoted approximately 80-90 hours assisting with this case.   (ECF No. 33-4 at ¶¶ 8-10.)  Plaintiff joined lengthy interviews and phone conferences with counsel, searched for and provided documents to counsel, reviewed documents and pleadings, and was on standby during a full-day mediation session.  (Id.)  Because plaintiff's job does not permit him to simply take a call during the workday, plaintiff had to request the day off work to ensure he would be available to his attorneys during the mediation session.  (Id.)  As plaintiff is the main provider for his family and often lives paycheck to paycheck, taking time away from work to perform tasks on this case was particularly burdensome.  (Id. at ¶ 14.)  Further, plaintiff opened himself up to certain risks in pursing litigation, such as the risk of stigma by future employers and the risk of bearing litigation costs. (Id. at ¶ 13.)  Courts award incentive awards in this range, or higher.  Cassidy Marsh v. The Procter & Gamble Paper Prod. Co., et al., 2019 WL 13029906, at **4-5 (C.D. Cal. July 11, 2019) (awarding $15,000 in a service award from a $650,000 settlement fund, equaling to 2.3% of the settlement fund); Gaudin v. Saxon Mortgage Servs., Inc., 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) ($15,000 incentive award approved); Amaro v. Gerawan Frming Inc., 2020 WL 6043936, at *10 (E.D. Cal. Oct. 13, 2020) (Fresno) (approving a $10,000 incentive award, amounting to 2% of the gross settlement fund and being in line with other incentive awards approved by that court); Ross v. U.S. Bank Nat'l Ass'n, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs based on their

contributions to litigation and the risk that being a class representative would harm their reputation); Dearaujo v. Regis Corp., 2017 WL 3116626, at *9, *15 (E.D. Cal. July 21, 2017) (awarding a $15,000 incentive award in a wage and hour class action).

The court agrees that the amount is reasonable in light of plaintiff's actions and the standard service payment in this district.  Richardson, 2016 WL 1366952 at *13.  Thus, the court awards the named plaintiff a service award of $15,000.

## **ORDER**

For the above reasons, it is HEREBY ORDERED that:

1. The class action settlement agreement and the PAGA agreement, and the settlement embodied therein, is APPROVED as fair, reasonable, and adequate;

2. The certification of the settlement class as defined in this court's order of July 6, 2023 (ECF No. 31) is hereby CONFIRMED for purposes of the settlement of this action;

3. The notice to class members, as provided for by the agreement, constituted the best notice practicable under the circumstances, and was valid, due, and sufficient notice to class members in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution;

4. The representative class plaintiff and class counsel have fairly and adequately represented the interests of the settlement class members at all times in the action;

5. Settlement class members who have not timely requested exclusion from the settlement class and any of their predecessors, successors, representatives, parent companies, subsidiaries, affiliates, heirs, executors, administrators, attorneys, successors, and assignees are hereby enjoined and barred from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them or in any other capacity whatsoever, any action in any state or federal court or any other tribunal, forum, or proceeding of any kind against the released parties that asserts any of the released claims as set forth in the agreement;

6. Defendants are discharged from all further liability for the released claims to

settlement class members;

7.  Class counsel's request for fees is GRANTED in the MODIFIED amount of $187,500, subject to the fee division agreement of counsel;

8.  Class counsel's request for costs of $7,398.72 is fair and reasonable and is hereby GRANTED,

9.  The request for an enhancement award of $15,000 to the named plaintiff is fair and reasonable and is hereby GRANTED;

10. The $15,500 fees of CPT, the claims administrator are APPROVED;

11. The PAGA settlement of $37,500 is APPROVED, with 75% of this sum being paid to the State of California, and the remainder to class members with a PAGA claim, based on the settlement agreement of the parties;

12. The action is hereby DISMISSED WITH PREJUDICE;

13. The court RETAINS jurisdiction over this case for the limited purpose of administering the settlement, enforcing the settlement, and related matters; and

14. The Clerk of the Court shall enter this order as a final judgment in the docket of this action.

Dated:  January 2, 2024

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

RS, alma.0699